TERRELL, Justice.
The employer in this case was St. Francis Hospital and the claimant was Eileen S. Feinberg, an employee of the employer. The employee is alleged to have sustained an injury October 15, 1960, while in line of duty, by slipping on the stairway and striking her right foot and leg against the wall. A claim for workmen’s compensation was seasonably filed and hearings were conducted, at the conclusion of which the deputy commissioner entered an order dated August 22, 1961, awarding compensation benefits to the employee. On review by the full commission the order of the deputy commissioner was reversed on the ground “that there is no ‘competent substantial evidence,’ which accords with either logic or reason, to sustain the deputy’s finding of *542 fact that the claimant suffered an injury as alleged on October IS, 1960, or that her thrombophlebitis resulted from such alleged injury.”
We are confronted with an appeal by certiorari from the order of the full commission.
The only point with which we are confronted is whether or not there was competent substantial evidence in accord with logic and reason to support the finding of the deputy commissioner relating to the industrial accident incurred by the claimant October 15, 1960, while in the course of her employment and if so, did said industrial accident have any relation to the thrombophlebitis.
The overall testimony shows that claimant was asymptomatic to injury to her veins prior to the accident of October 15, 1960. The diagnosis of the claimant by Dr. Terheyden, October 25, 1960, at St. Francis Hospital shows possible traumatic phlebitis of the leg. On consultation with Dr. Jana, a vascular specialist, during the hospitalization it was resolved that the symptoms of thrombophlebitis were not present but that the claimant had mild myo-sitis or an inflammation of the muscular tissue.
On claimant’s second admission to St. Francis Hospital November 16, 1960, the diagnosis of Dr. Joseph Glassberg was acute thrombophlebitis, right leg. This diagnosis was the result of consultations by Doctors Terheyden, Broyles, Horwitz and Kohen as shown from St. Francis Hospital records November 16, 1960. Dr. Horwitz and Dr. ■Glassberg testified with reasonable medical probability that claimant’s thrombophlebitis was the result of the trauma of October 15, 1960. Dr. Glassberg testified that there were no organic faults in claimant’s vessel walls and that he probed for other possible ■causes of the thrombophlebitis but that based on the evidence available to him and fhe claimant’s age of 25 years, he concluded, with reasonable medical probability, that trauma caused the thrombophlebitis.
In brief of petitioner we are favored with the following analysis of some major portions of the evidence supporting the deputy commissioner’s order:
“Dr. Terheyden, the employer and carrier’s witness, made an admitting diagnosis on October 25, 1960, of post traumatic phlebitis of the leg and although the consultant Dr. Jana found a negative Homan’s sign these facts do not mitigate [sic] against competent substantial evidence of Drs. Glassberg and Horwitz to the effect that an acute thrombophlebitis did exist on November 16, 1960. Even though Dr. Glass-berg testified that in his opinion the prior admission of October 25 may have been for thrombophlebitis this in no way mitigates [sic] against his opinion that the thrombosis which was diagnosed and concurred in by Dr. Terhey-den on November 16, 1960 was causally related to the October 15, 1960 accident to the claimant’s leg. The fact that the prior admission was a myositis rather than a phlebitis does not destroy the medical opinion based on reasonable medical probability as to the relationship of the thrombophlebitis with the incident of October 15, 1960. Both Dr. Glassberg and Dr. Horwitz made tests to determine if there were any intrinsic causes for the development of the claimant’s thrombophlebitis and found that the only reasonable conclusion was extrinsic, the trauma of October 15, 1960, and certainly this testimony amounted to competent substantial evidence to sustain the finding of the Deputy Commissioner of the relationship between the trauma and the disability.
“Therefore, based on the testimony of Drs. Glassberg, Horwitz and Terhey-den the diagnosis of thrombophlebitis was conclusively affirmed on November 16, 1960. None of the doctors that testified at the hearing stated that this thrombophlebitis in the claimant’s leg was not the result of the injury of'Oc *543 tober 15, 1960. The carrier’s doctor testified that the claimant had myositis at the time of her first admission to the hospital but agreed that on the second admission thrombophlebitis was evident. There is no testimony in the record that thrombophlebitis could not develop from the trauma that the claimant received, on the contrary, the testimony of Drs. Glassberg and Horwitz show conclusively that the thrombo-phlebitis can result from a slight trauma ; that the result would depend upon the effect the trauma had on the individual person. It is reasonable therefore to believe that the claimant, who was asymptomatic prior to the injury of October 15, 1960, suffered a muscle injury which developed into the throm-bophlebitis that appeared on November 16, 1960. There is no contradictory evidence in the record.”
The same brief also favors us with the following analysis of some major portions of the evidence supporting the full commission’s order:
“The Full Commission stated in their order that since the medical opinions of both Drs. Glassberg and Horwitz is necessarily based upon evidence of the existence of thrombophlebitis immediately after the alleged October 15, 1960, incident, their testimony was not competent substantial evidence in accord with logic and reason. This statement of the Full Commission is obviously not based on the medical testimony in this record. Nowhere do any of the doctors state that the thrombophlebitis necessarily had to be in existence immediately after the alleged incident of October 15, 1960. Dr. Glassberg was aware that myositis existed rather than thrombo-phlebitis on the first hospital admission and that Dr. Horwitz suspected that thrombophlebitis existed prior to November 16, 1960. Dr. Glassberg made the definite diagnosis of thombophlebi-tis after seeing the claimant on November 16th. This diagnosis was thereafter confirmed by Dr. Terheyden. Dr. Terheyden, the carrier’s witness, does not negate the fact that thrombo-phlebitis could have developed from the myositis which he found on the first hospital admission. Therefore, the medical opinion of Drs. Glassberg and Horwitz need not have been based on the existence of thrombophlebitis immediately after the alleged October 15, 1960 incident, as the Full Commission evidently believed. Medically, the thrombophlebitis could have developed subsequent to the myositis. It did in this case and therefore the Full Commission’s finding in its order is erroneous and not based on the medical facts.”
I have set out in extenso the reasoning of the deputy commissioner and the full commission as analyzed in petitioner’s brief; the evidence as carefully read supports the deductions contained in petitioner’s brief. The function of these two-agencies is clearly set out in the law and in-the opinions of this court. In United States Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741, and others, we held' that it was the function of the deputy commissioner to evaluate and measure the-weight and credibility of the evidence. Conflicts in the evidence must be resolved’ by the deputy commissioner. The full commission may review findings of fact made by the deputy commissioner but its function is limited to determining whether or not such findings are supported by competent substantial evidence. Calvert v. Coral Gables First National Bank, Fla.1960, 119 So.2d 33. The full commission did much more than this. Much of its order has-to do with the credibility of the testimony and other factors which were clearly that of the deputy commissioner to determine.
In determining whether or not there is competent substantial evidence that accords with logic and reason to support the findings of the deputy commissioner, the full commission is bound by these principles: (1) The workmen’s compensation- *544 act should be liberally construed and all doubts resolved in favor of the working man; (2) the claimant is not bound by the preponderance rule or the rule which requires proof to the exclusion of a reasonable doubt and while the claimant may not recover on mere speculation or conjecture, if the proof furnishes a reasonable basis for an inference that the injury resulted from an accident arising out of and in the course of the employment, it is sufficient. Johnson v. Dicks, Fla.1954, 76 So.2d 657.
It is true that the evidence in this case was conflicting. The claimant told different stories about when and where she was injured. As respondent said in his brief,
“Her versions of the industrial accident and her statements of what she did and didn’t say to many of the witnesses and their contradictory statements are as varied as the rainbow’s colors and are as elusive to pin down as the mythical pot-of-gold at the end of the rainbow.”
We are not so gifted with the bard’s yen as to find so much poetry in the locale where the claimant said she was injured. She did in a casual way speak of it having occurred in more than one place but when she was placed on the stand to testify, she did not falter or equivocate but placed it in the hospital where it actually took place. Her testimony was positive while that which may be said to have been to the contrary was negative; the deputy commissioner believed her statement about it and when taken as a whole the evidence on this point was conclusive. The testimony of other witnesses corroborated that of petitioner. We think the proof as a whole furnishes more than an ample basis for an inference that the injury resulted from an accident arising out of and in the course of petitioner’s employment at the place where she testified it did. The full commission, one commissioner dissenting, held to the contrary but in doing so they traveled outside their jurisdiction. Whether a witness lied or told the truth, what reasonable assumption may be drawn from what he testified to, what inferences may be reasonably drawn from the evidence are questions for the deputy commissioner to determine.
The order of the full commission is therefore quashed and the order of the deputy commissioner is reinstated with directions to proceed accordingly.
DREW, THORNAL and O’CONNELL, JJ., concur.
THOMAS, J., agrees to conclusion.
ROBERTS, C. J., and CALDWELL, J., dissent.