Mr. William A. Bessent, III Bradford County Attorney Post Office Box 1056 Starke, Florida 32091
Dear Mr. Bessent:
You ask substantially the following questions:
1) Does the county have a duty to provide a jail?
2) May a county create a special district or municipal service taxing unit for the provision and maintenance of a county jail or county detention facility?
3) May a county contract with a municipality to provide a jail or detention facilities to the municipality?
4) Does section 950.001, Florida Statutes, preclude the establishment and operation of jail or detention facilities by a combination of municipalities, special districts or other entities and county government within that county?
5) May a county jail or county detention facility refuse prisoners delivered to it by municipalities or special districts in that county?
6) If the county sheriff has not been designated as chief correctional officer of the county pursuant to section 951.061, Florida Statutes, may the county commission designate another chief correctional officer without consultation with the sheriff?
In sum:
1) The statutes contemplate that a county will provide jail or detention facilities within the county or make provision for the custody of prisoners who otherwise would have been assigned to the county jail.
2) A county may not create a municipal service taxing unit or special district for the provision and maintenance of a county jail.
3) A county may enter into an agreement with a municipality to house municipal prisoners in the county jail or to house county prisoners in the municipal detention facility. 4) In the absence of a statute authorizing a municipality or special district to exercise powers outside of its territorial limits, a municipality or special district may not exercise such extraterritorial powers.
5) A county detention facility may not refuse to accept a prisoner who has been lawfully directed to be committed to the facility.
6) The county commission is not required to consult with the sheriff regarding the designation of an individual other than the sheriff as chief correctional officer unless the county seeks to enter into a contract with a private entity to operate and maintain the county detention facilities and to designate the private entity as the chief correctional officer.
Question One
You refer to section 138.09, Florida Statutes 1981, which provided in part that "the said county commissioners shall erect, as soon as possible, a courthouse and jail . . . at the place so selected as the county seat aforesaid." In 1982, however, the Legislature deleted the term "and jail" from section 138.09, Florida Statutes.[1] You ask whether a county is still required to provide and maintain a county jail or county detention facility.
An examination of the legislative history surrounding the 1982 amendment clearly indicates that it was the Legislature's intent to remove only the statutory requirement that the county jail be maintained at the county seat. There is no indication that the Legislature sought to modify or remove the responsibility of the board of county commissioners to provide for county prisoners.[2]
You note that section 902.21, Florida Statutes, provides that if a person is committed in a county where there is no jail, the committing magistrate shall direct the sheriff to deliver the accused to a jail in another county. Section 902.21, Florida Statutes, however, has been in existence in one form or another since 1828.[3]
An examination of the statutes read in pari materia indicates that the county is responsible for the custody of county prisoners.[4]
The statutes, however, recognize that the county may enter into agreements with other governmental units to jointly provide such facilities,[5] or under certain conditions, prisoners may be exchanged or transferred between counties.[6]
Accordingly, I am of the opinion that the deletion of the word "jail" in section 138.09, Florida Statutes, does not remove the responsibility of the county to provide for county prisoners.
Question Two
Section 125.01(1)(q), Florida Statutes (1990 Supplement), authorizes the establishment of municipal service taxing or benefit units for any part or all of the unincorporated area of the county within which may be provided certain essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within the unit only. The responsibility to provide for county prisoners, however, is a county responsibility and is not limited to merely the unincorporated areas. Accordingly, the creation of such districts would not appear to be the appropriate method of meeting the county's responsibilities to provide for county prisoners.
Section 125.01(5)(a), Florida Statutes (1990 Supplement), authorizes a county commission to establish a special district to include both the incorporated and unincorporated areas, subject to the approval of the governing body of the incorporated area affected, to provide municipal services and facilities from service charges, assessments, or taxes. As discussed supra, however, providing for county prisoners is a county function. The creation of a special district pursuant to section 125.01(5), Florida Statutes (1990 Supplement), to provide such a county function would not, therefore, appear to be authorized.
Question Three
This office on several occasions has stated that a county and a municipality may enter into an agreement to permit a municipality to use county jail facilities. For example, in Attorney General Opinion 75-128 this office concluded that Sarasota County and the City of North Port Charlotte had the authority to formulate an agreement which delineates the rights and responsibilities of each party regarding the transportation and confinement of municipal prisoners in the county jail.[7] In reaching this conclusion, this office relied on the provisions of section 125.01(1)(p), Florida Statutes (1990 Supplement), which authorizes a county to "[e]nter into agreements with other governmental agencies within or outside the boundaries of the county for joint performance, or performance by one unit in behalf of the other, of any of either agency's authorized functions."
Similarly, this provision would appear to authorize the county to enter into an agreement with a municipality to house county prisoners in the municipal detention facility.[8] However, the Department of Corrections is authorized and directed to adopt rules and regulations prescribing minimum standards and regulations for county and municipal detention facilities.[9] Any facility, therefore, would be required to comply with the statutory and department regulations relating to the housing of county and municipal prisoners.
Question Four
As a general principle, a governmental entity's powers are coexistent with its territorial boundaries.[10] Accordingly, counties, municipalities, and special districts may not act beyond their respective boundaries in the absence of an express statutory grant.
Section 950.001, Florida Statutes, specifically authorizes counties to establish a regional jail outside of their boundaries. In the absence of statutory authority empowering a municipality or special district to exercise powers outside of its territorial limits, however, such governmental entities would not appear to be authorized to exercise such powers.
Question Five
Section 839.21, Florida Statutes, provides that any jailer or other officer, who willfully refuses to receive into the jail or into his custody a prisoner lawfully directed to be committed thereto on a criminal charge or conviction, or any lawful process whatever, is guilty of a misdemeanor of the first degree, punishable as provided in section 775.082 or section 775.083, Florida Statutes. The determination, therefore, whether the county detention facility may refuse to accept a prisoner will depend upon whether such a prisoner has been lawfully directed to be committed to the facility. Generally, however, the county would not appear to be responsible for housing prisoners convicted of violating a municipal ordinance in the absence of an agreement between the county and municipality.[11]
Question Six
The courts have held that in the absence of a constitutional description of the sheriff's duties, "the operation of [the county jail] and the control and custody of the inmates therein incarcerated are in the hands of the sheriff."[12] The sheriff's responsibility for the operation of the county jail is reflected by section 30.49, Florida Statutes (1990 Supplement), which requires the sheriff to show in his proposed budget estimated amounts for "operating and equipping the sheriff's office and jail
other than construction, repair, or capital improvement of county buildings during such fiscal year."[13] (e.s.) The county jail, however, is county property and the operation of the jail is a part of county government.[14] I am not aware of any provision which mandates that the sheriff operate the county jail. In fact, recently the court in Feldman v. Brescher[15] held that a sheriff has no inherent or constitutional duty to maintain the county jail, and stated that until the enactment of section 951.061, Florida Statutes, no Florida statute authorized the sheriff to maintain the county jail. Section 951.06, Florida Statutes, provides that the county commission shall designate a chief correctional officer. Pursuant to section 951.061, Florida Statutes, the county commission may designate the sheriff as the chief correctional officer. An examination of the legislative history surrounding the enactment of section 951.061, Florida Statutes, does not indicate an intent to limit the designation of the chief correctional officer to that of the sheriff.[16] With the exception of section 951.062, Florida Statutes, relating to contractual arrangements for the operation and maintenance of county detention facilities by a private entity,[17] I am not aware of any statutory provision which requires the county commission to consult with sheriffs before designating a chief correctional officer.
Therefore, I am of the opinion that the county commission is not required to consult with the sheriff when designating an individual other than the sheriff as chief correctional officer unless the county seeks to enter into a contract with a private entity to operate and maintain the county detention facilities and designate such private entity as the chief correctional officer.
Sincerely,
Robert A. Butterworth Attorney General
RAB/t
[1] Chapter 82-43, Laws of Florida.
[2] See, Bill Analysis, Committee on Corrections, Probation 
Parole, Florida House of Representatives, dated February 3, 1982, stating that s. 138.09, Fla. Stat. 1981, had been interpreted by one court to mean that the jail must be located within the county seat. In discussing the probable effect of the proposed change, the analysis states:
"Eliminating the reference to jails in the section relating to establishment of county seats is thought to be sufficient to allow counties to place jails in locations of choice, rather than restricting them to county seats. It is hoped that this will partially allay the high cost of providing county jails by allowing counties to purchase lands less expensive than those available in the county seats."
[3] See, s. 7, Act of November 19, 1828; s. 2879, Rev. Stat. 1892; s. 3938, Gen. Stat. 1906; s. 6039, Rev. Gen. Stat. 1920; s. 8340, Comp. Gen. Laws 1927; s. 932.39, F.S. 1969; s. 20, Ch. 70-339, Laws of Florida.
[4] See, s. 951.23(1)(c), Fla. Stat. (1990 Supp.), defining "[c]ounty prisoner" to mean a person who is detained in a county detention facility by reason of being charged with or convicted of either a felony or misdemeanor; and s. 950.01, Fla. Stat., which provides:
"When it appears to the court at the time of passing sentence upon any prisoner who is to be punished by imprisonment in the county jail that there is no jail in the county suitable for the confinement of such prisoner, the court may order the sentence to be executed in any county in this state in which there may be a jail suited to that purpose, and the expense of supporting suchprisoner shall be borne by the county in which the offense wascommitted." (e.s.)
And see, Ops. Att'y Gen. Fla. 72-346 (1972) and 59-18 (1959) stating that state patrolmen are agents of the state directed by law to deliver their prisoners to the sheriff of the county where the prisoner was arrested. Cf., Art. XVI, s. 9, Fla. Const. 1885, establishing that fees incurred in the arrest and keeping of persons charged with a crime prior to trial and the expenses of the trial of such persons are county, not state, expenses; and s.901.35, Fla. Stat., (1990 Supp.), providing for the county's financial responsibility for the medical expenses for persons ill or injured during or at the time of arrest for a violation of state law or county ordinance.
[5] See, s. 950.001, Fla. Stat., authorizing the establishment of regional jails and providing that each participating county shall be responsible for its proportionate share of maintenance, operational, and fixed capital outlay expenses. And see, Op. Att'y Gen. Fla. 75-128 (1975) stating that a county was authorized to enter into an agreement with a municipality for the municipality to house municipal prisoners in the county jail.
[6] See, s. 951.12, Fla. Stat., providing that in cases where the number of prisoners in any county at any time is less than five, the county commissioners of such county may arrange with the county commissioners or another county for an exchange of prisoners. See also, s. 951.13, Fla. Stat., providing for transferring prisoners from one county to another when a county requests additional prisoners to work on the public roads. In such cases, the costs of guarding and maintaining the prisoners are paid by the county applying for and receiving the prisoners. No prisoners, however, may be sent out of the county in which they have been convicted and sentenced to work in any other county unless a contract for that purpose has been entered into by the boards of county commissioners of the respective counties.
[7] And see, Op. Att'y Gen. Fla. 72-259 (1972).
[8] Cf., s. 951.23(1)(a), Fla. Stat. (1990 Supp.), defining "[c]ounty detention facility" to mean "a county jail, a county stockade, a county prison camp, a county residential probation center, and any other place except a municipal detention facility
used by a county or county officer for the detention of persons charged with or convicted of either felony or misdemeanor"; and s.951.23(1)(d), Fla. Stat. (1990 Supp.), defining "[m]unicipal detention facility" to mean "a city jail, a city stockade, a city prison camp, and any other place except a county detentionfacility used by a municipality or municipal officer for the detention of persons charged with or convicted of violation of municipal laws or ordinances." (e.s.)
[9] See, s. 951.23, Fla. Stat. (1990 Supp.), and Ch. 33-8, Fla.Admin C.
[10] See generally, 81A C.J.S. States s. 17 (jurisdiction of a state is restricted to its own territorial limits and does not extend beyond its boundaries); 62 C.J.S. Municipal Corporations s. 14 (powers of municipality cease at its municipal boundaries).Cf., Op. Att'y Gen. Fla. 85-103 (1985) (state officer is officer whose duties and powers are coextensive with territorial limits of state; county officers are those whose exercise of power is confined to limits of the county).
[11] See generally, s. 951.23(1)(e), Fla. Stat. (1990 Supp.), defining "[m]unicipal prisoner" to mean a person who is detained in a municipal detention facility by reason of being charged with or convicted of violation of municipal law or ordinance. And see, s. 901.35(2)(b), Fla. Stat. (1990 Supp.), stating that the costs of providing medical care, treatment, hospitalization, and transportation for a person injured during or at the time of arrest shall be paid, if the reimbursement from the sources in subsection (1) are not available, from the municipal general fund if the arrest was for a violation of a municipal ordinance.
[12] Baugher v. Alachua County, 305 So.2d 838, 839 (Fla. 1st DCA 1975). See also, Brown v. St. Lucie County, 153 So. 906, 908
(Fla. 1933) (county jail is county property which the law requires the sheriff to manage and look out for); Ops. Att'y Gen. Fla. 77-55 (1977) and 74-266 (1974) (sheriff is responsible for efficient operation of jail).
[13] Section 30.49(2), Fla. Stat. (1990 Supp.).
[14] Attorney General Opinion 47-293, p. 151.
[15] 561 So.2d 1271 (Fla. 4th DCA 1990).
[16] See, Tape 1 of 2, Committee on Corrections, Probation and Parole, Florida House of Representatives, dated May 1, 1986, relating to enactment of Ch. 86-183, Laws of Florida.
[17] Section 951.062(1), Fla. Stat., provides that after consultation with the sheriff and upon adoption of an ordinance by a vote of a majority plus one, the governing body of a county may enter into such a contractual arrangement with a private entity.